# United States Court of Appeals
## For the First Circuit

No. 17-1941

JANE DOE,

Plaintiff, Appellant,

v.

BROWN UNIVERSITY in Providence in the State of Rhode Island and
Providence Plantations, JONAH ALLEN WARD, and
YOLANDA CASTILLO-APPOLLONIO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Wendy Murphy, with whom Patrick T. Jones, Audrey R. Poore,
and Jones Kelleher LLP were on brief, for appellant.
Thomas R. Bender, Associate Counsel, Office of General
Counsel, Brown University, with whom Steven M. Richard and Nixon
Peabody LLP were on brief, for appellees.
Jenna M. Labourr and Washington Injury Lawyers, PLLC, on brief
for amici curiae Equal Means Equal, National Coalition Against
Violent Athletes, Allies Reaching for Equality, and Faculty
Against Rape, in support of appellant.

July 18, 2018

**TORRUELLA**, **Circuit Judge**.  In November 2013, Jane Doe ("Doe"), then a freshman at Providence College, was sexually assaulted by three students of Brown University ("Brown") on Brown's campus.  After Doe reported the assault to the local authorities in the City of Providence, Brown notified Doe that it would conduct an inquiry to determine whether the students had violated Brown's Code of Student Conduct.  Doe alleges that eventually, Brown abandoned the investigation and did not initiate any disciplinary action against the three Brown students.  Doe then initiated this action seeking damages and equitable relief against Brown under Title IX of the Education Amendments to the Civil Rights Act of 1964.  20 U.S.C. § 1681 et seq.  The district court granted Brown's motion for judgment on the pleadings, and Doe now appeals that decision.  For the reasons explained below, we find that Doe's complaint did not, on its face, allege sufficient facts for a plausible Title IX claim against Brown, and therefore affirm the district court's grant of Brown's motion for judgment on the pleadings.

## I.  Background

### A. Factual Background

Because this case was decided on a motion for judgment on the pleadings, we take the well-pleaded facts from the complaint and draw all reasonable inferences in the plaintiff's favor.

-3-

<u>Najas Realty, LLC</u> v. <u>Seekonk Water Dist.</u>, 821 F.3d 134, 137, 140 (1st Cir. 2016).

On November 21, 2013, Doe, a freshman at Providence College,[1] was socializing with some friends at a bar in Providence, Rhode Island. While at the bar, Doe was drugged "against her knowledge and will," transported by taxi to a Brown dormitory, and sexually assaulted by three males over an extended period of time. The assailants were all Brown students and members of Brown's football team. Doe received medical treatment at a Massachusetts hospital shortly thereafter.

On February 3, 2014, Doe reported the sexual assault to the Providence Police Department. A Brown University Police officer was present while Doe gave a statement to the Providence Police. Between February and May 2014, the Providence Police executed several search warrants for the dorm rooms and cell phones of the Brown students suspected of assaulting Doe. The seized cell phones revealed text messages between the Brown students that referenced rape and contained explicit images of Doe, taken at the time of the alleged sexual assault.

On June 19, 2014, Brown University notified Doe that she had a right to file a complaint pursuant to Brown's Code of Student

---

[1] Providence College is not affiliated with Brown University, and Doe has not claimed that she was a Brown student.

-4-

Conduct, but mentioned nothing regarding Doe's right to file a Title IX complaint. Doe then explicitly requested that Brown investigate her sexual assault following Title IX standards. However, Brown insisted that it would only conduct an inquiry under the Code of Student Conduct. As a result, on October 11, 2014, Doe filed a complaint against Brown with the Department of Education's Office for Civil Rights ("OCR").[2]

In June 2016, after Doe had repeatedly requested an update on the status of Brown's inquiry, Brown responded that it never completed the investigation and had abandoned any disciplinary action against the three Brown students. On an unspecified date, Doe withdrew from Providence College out of fear for her safety and well-being while on the Providence College campus and in the general Providence area. This fear, she alleges, was a direct result of Brown's inactions regarding her sexual assault, including Brown's failure to discipline the suspected assailants.

## B. Procedural Background

Doe filed suit against Brown seeking compensatory damages and equitable relief under Title IX.[3] In her complaint,

---

[2] Doe's OCR complaint was accepted for investigation and remains pending.

[3] Doe also asserted two state law claims under the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, and Rhode Island's

Doe alleged that Brown had violated Title IX when it acted with deliberate indifference after Doe's sexual assault by failing to provide her a prompt, equitable, and effective response and redress as Title IX requires.  She also alleged that Brown failed to enforce Title IX in the response to and redress of sex-based violence about which it knew or should have known, thereby creating a hostile environment prior to Doe's sexual assault.  As a direct result of Brown's actions or inactions, Doe claims to have suffered substantial interference with her access to educational opportunities or benefits, ultimately causing her to withdraw from Providence College.

Brown moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), and after a hearing, the district court granted Brown's motion.  Doe v. Brown Univ., 270 F. Supp. 3d 556, 563 (D.R.I. 2017).  The district court found that "Doe's status as a non-student [of Brown], regardless of her allegations that the Court accepts as true, removes her from Title IX's private-cause-of-action umbrella of protection."  Id.

---

Equal Protection clause, R.I. Const. art I, § 2, against Brown University and certain Brown officials.  However, the district court dismissed these claims without prejudice after declining to exercise supplemental jurisdiction over them.  Since then, Doe has refiled the state law claims in state court.

## II.   Discussion

"We review a district court's grant of judgment on the pleadings de novo." Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007). In doing so, "we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant (here, the plaintiff)." Kando v. R. I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). This Court "will affirm a dismissal or judgment on the pleadings if the complaint fails to state facts sufficient to establish a 'claim to relief that is plausible on its face.'" Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (quoting Trans–Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008)). We are, of course, "not bound by the district court's reasoning but, rather, may affirm the entry of judgment on any ground made manifest by the record." Kando, 880 F.3d at 58.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied "private right of action to enforce [Title IX's] prohibition on intentional sex discrimination," see Cannon v. Univ. of Chi., 441 U.S. 677, 690-993 (1979), which includes

actions for monetary damages by private persons and "encompasses intentional sex discrimination in the form of a recipient's deliberate indifference." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). While the Court has recognized that this right of action extends to students and employees, it has never expressly restricted it to those two categories of plaintiffs. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 281 (1998); North Haven Bd. of Ed. v. Bell, 456 U.S. 512, 520-21 (1982). In fact, the Court has stated that "Title IX . . . broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" Jackson, 544 U.S. at 173. Sexual harassment, moreover, "can constitute discrimination on the basis of sex under Title IX." Gebser, 524 U.S. at 283.

A recipient of federal funding can be liable under Title IX if "its deliberate indifference 'subjects' its students to harassment." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 644 (1999) (brackets omitted). To succeed in bringing such a "deliberate indifference" claim, a plaintiff must show that (1)"he or she was subject to 'severe, pervasive, and objectively offensive' sexual harassment"; (2) "the harassment caused the plaintiff to be deprived of educational opportunities or benefits"; (3) the funding recipient was aware of such harassment; (4) the harassment occurred "in [the funding recipient's] programs

-8-

or activities"; and (5) the funding recipient's response, or lack thereof, to the harassment was "clearly unreasonable." Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007).

Doe dedicates a number of pages of her brief to arguing that based on Cannon's four-part test,[4] she has a private right of action against Brown under Title IX. See Cannon, 441 U.S. at 689-709. Doe further argues that the district court erred when it found that she had no right to sue Brown because Brown lacked any "authority or capacity to take corrective action on behalf of Doe with regard to her education at Providence College." According to Doe, because Title IX imposes liability when "the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs," Davis, 526 U.S. at 645 -- which Doe alleges is the case here -- her complaint should have been allowed to proceed. We, however, do not need to reach these arguments in light of our conclusion that the district court's judgment on the pleadings was correct, albeit on other

---

[4] Cannon's four part test considers: (1) whether the statute in question was enacted for the benefit of a special class of which plaintiff is a member; (2) whether the legislative history provides any indication of congressional intent to create a private remedy; (3) whether recognizing a private remedy would frustrate the underlying purpose of the statue; and (4) whether recognizing a private remedy would be inappropriate because the subject matter involves issues better addressed by the states. 441 U.S. at 689-709.

grounds.  Rather, this case turns on whether Doe's complaint, on its face, pleads sufficient facts to establish a plausible claim for relief under Title IX.  And it does not.

Section 1681(a)'s text, prohibiting that any person "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity," indicates that a person may be "subject[] to discrimination under" a funding recipient's education program without necessarily being "excluded from participation in" or being "denied benefits of" that program.  20 U.S.C. § 1681(a). The Supreme Court confirmed as much in Bell. See 456 U.S. at 520-21.  There, when the Court determined that "Title IX proscribes employment discrimination in federally funded education programs," id. at 535–36, it found that "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans, or contracts clearly fall within the first two protective categories" of Title IX, that is, "excluded from participation in" and "denied the benefits of." Id. at 520-21.  In addition, the Court found that "a female employee who works in a federally funded education program is 'subjected to discrimination under' that program if [for example] she is paid a lower salary for like work, given less opportunity for promotion, or forced to work under more adverse conditions than are her male colleagues."  Id. at 521.  In

other words, the "subject to discrimination under" clause captures situations other than where a person has been "excluded from access to" or "denied the benefits of" an educational program. The "subject to discrimination under" clause covers situations where a person -- while participating in a funding recipient's educational program or activity -- has inferior access to or is less able to enjoy the benefits of a particular educational program relative to members of the opposite sex.

Thus, Bell implies that, in order for a person to experience sex "discrimination under an education program or activity," that person must suffer unjust or prejudicial treatment on the basis of sex while participating, or at least attempting to participate, in the funding recipient's education program or activity. That a potential Title IX plaintiff seeking relief for being "subjected to discrimination under" an education program must be a participant, or at least have the intention to participate, in the defendant's educational program or activity seems logical since the "discrimination" that Title IX prohibits is not the acts of sexual assault or sexual harassment in and of themselves, but rather the differential treatment by a funding recipient of persons of a particular sex who are taking part or trying to take part in its educational program or activity but are suffering acts of sexual harassment or assault that undermine their

-11-

educational experience.  Cf. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1998) (Ginsburg, J., concurring))).[5]  And here is where Doe's complaint is lacking.

In her complaint, Doe alleged that she suffered interference with her access to educational opportunities to the point where she had to withdraw from Providence College, and argued that "[n]othing in Title IX jurisprudence requires that a Plaintiff must suffer interference with educational opportunities at the offending institution."  But we have to disagree.

Not only did the Supreme Court suggest in Bell that the scope of Title IX's "subject to discrimination under" clause is circumscribed to persons who experience discriminatory treatment while participating, or at least attempting to participate, in

---

[5]  As we have noted before, "[w]e may turn to Title VII for guidance on Title IX claims."  Doe v. Trs. of Bos. Coll., 892 F. 3d 67, 92 n.18 (1st Cir. 2018).

-12-

education programs or activities <u>provided by the defendant institution</u>,[6] <u>cf.</u> 456 U.S. at 520-21, but <u>Davis</u> also supports this proposition, <u>cf.</u> 526 U.S. 629, 650-52. In <u>Davis</u>, while discussing the circumstances under which schools may be liable for their deliberate indifference to student-on-student sexual harassment, the Court stated that

> [F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive <u>that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school</u>.

<u>Id.</u> at 650 (emphasis added). The Court then emphasized this limitation by explaining that a Title IX damages claim is available when the harassment "so undermines and detracts from the victims' educational experience, that the victim-students are effectively

---

[6] We clarify, though, that a victim does not need to be an enrolled student at the offending institution in order for a Title IX private right of action to exist. Members of the public regularly avail themselves of the services provided by educational institutions receiving federal funding. For example, they regularly access university libraries, computer labs, and vocational resources and attend campus tours, public lectures, sporting events, and other activities at covered institutions. In any of those instances, the members of the public are either taking part or trying to take part of a funding recipient institution's educational program or activity. In the case before us, however, Doe failed to allege that she had availed herself of any of Brown University's educational programs in the past or that she intended to do so in the future. She did not plead that Brown University's alleged deliberate indifference to it prevented her from accessing such resources at Brown.

denied equal access to [the] institution's resources and opportunities." Id. at 651. The Court further stated that "the provision that the discrimination occur 'under any education program or activity' suggests that the behavior be serious enough to have the systemic effect of denying the victim equal access to [the] educational program or activity." Id. at 652.

Doe's complaint alleged that she suffered "substantial interference with her access to educational opportunities or benefits" as a direct result of Brown's alleged deliberate indifference. But her complaint did not allege that she participated or even would have participated in any of Brown's educational programs or activities. Even accepting all of Doe's well-pleaded facts as true, her complaint contains no factual allegation as to how Brown's deliberate indifference "deprive[d] [Doe] of access to the educational opportunities or benefits provided by [Brown]." Davis, 526 U.S. at 650. Therefore, Doe's complaint, on its face, fails to establish that she has been "subjected to discrimination under [Brown's] education program or activity." 20 U.S.C. § 1681(a). Finding no plausible claim under Title IX in Doe's complaint, we must affirm the district court's grant of Brown University's motion for judgment on the pleadings.

### III.  Conclusion

Like the district court before us, we also recognize that Doe's complaint contains very serious allegations of sexual assault on a university's campus.  However, because Doe's complaint failed to allege sufficient facts for a plausible Title IX claim against Brown, we affirm the judgment of the district court.

**Affirmed.**