June 28, 2021

**Supreme Court**

No. 2019-167-Appeal.
(PC 17-4635)

Jane Doe              :

v.               :

Brown University et al.     :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jane Doe                    :

v.                          :

Brown University et al.     :

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Jane Doe, appeals from a

Superior Court judgment dismissing her complaint against the defendants, Brown

University, Jonah Allen Ward, and Yolanda Castillo-Appollonio (collectively

defendants).[1] Although the complaint existed only briefly in Superior Court, the

facts at issue also have lent themselves to claims in federal district court, as well as

an appeal to the United States Court of Appeals for the First Circuit. *See Doe v.*

*Brown University*, 270 F. Supp. 3d 556, 558-59 (D.R.I. 2017) (*Doe I*); *Doe v. Brown*

*University*, 896 F.3d 127, 128-29 (1st Cir. 2018) (*Doe II*). In Superior Court, the

plaintiff asserted claims under both the Rhode Island Civil Rights Act, chapter 112

of title 42 of the general laws (RICRA), and article 1, section 2 of the Rhode Island

---

[1] At all times relevant to the complaint, Mr. Ward was employed by Brown University as the Senior Associate Dean of Student Life and Ms. Castillo-Appollonio was employed by Brown University as the Associate Dean of Student Life.

Constitution. The matter now before us concerns the plaintiff's appeal from a grant of a motion to dismiss and the dismissal of all claims. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.[2]

**Facts and Travel**[3]

In the fall of 2013, plaintiff was a freshman at Providence College. On November 21, 2013, she was socializing at a bar in the Providence area when she was drugged, unbeknownst to her. The plaintiff was then transported by taxi to a Brown University dormitory, where she was sexually assaulted by three Brown University football players (individually Student A, Student B, and Student C). On November 30, 2013, plaintiff received treatment at Lawrence General Hospital, in Lawrence, Massachusetts, related to the sexual assault.

On February 3, 2014, plaintiff reported the sexual assault to the Providence Police Department. A Brown University Police detective was present when plaintiff made her statement. On February 26, 2014, a search warrant was executed on Student A's dorm room and cell phone. On March 27, 2014, a search warrant was executed on Student B's dorm room and cell phone. On May 8, 2014, a search

---

[2] We thank Allies Reaching for Equality, Equal Means Equal, National Coalition Against Violent Athletes, We Are Women, and Women Matter for submission of their thoughtful brief as amici curiae.

[3] Our recitation of facts is taken entirely from the allegations in plaintiff's complaint. As the judgment under review concerns the grant of a motion to dismiss, we assume the allegations are all true. *Mokwenyei v. Rhode Island Hospital*, 198 A.3d 17, 21 (R.I. 2018).

warrant was issued for the seizure of Student C's cellular device. A forensic analysis of the cell-phone data revealed communications between Student A and Student B from November 22, 2013, stating, "YO LIKE CLASSIC [Student C] THO . . . NO INVITE JUST WALKS IN AND STARTS RAPING HER." Another text from that day stated, "LMAO I died in her face, too real[.]"[4]

On June 19, 2014, defendants notified plaintiff that she had the right to file a complaint pursuant to the University's Code of Student Conduct (the Code of Conduct). On September 5, 2014, Dean Castillo-Appollonio notified plaintiff that Brown University would conduct an inquiry as to whether any of the students involved had violated the Code of Conduct. Dean Castillo-Appollonio also requested that plaintiff submit a statement in writing. On September 15, 2014, plaintiff gave defendants a three-page statement, as well as copies of documents from the Providence police investigation. The plaintiff also requested response and redress pursuant to Title IX.[5] On October 7, 2014, defendants notified plaintiff that Brown University would proceed with its inquiry only under the student disciplinary code, which process, plaintiff alleged, did not comply with Title IX standards.

---

[4] The plaintiff indicated in her complaint that "LMAO" is text jargon for "laughing my ass off."

[5] "Title IX" refers to Title IX of the Education Amendments of 1972, found at 20 U.S.C. § 1681 *et seq*.

On October 11, 2014, plaintiff filed a complaint against Brown University with the Office for Civil Rights at the United States Department of Education, alleging that Brown University had unlawfully refused to redress her complaint under Title IX and that Brown University had failed to provide a prompt, equitable, and effective response to plaintiff's sexual assault. At the time plaintiff's complaint was filed in Superior Court, that complaint with the Department of Education had been accepted for investigation and was still pending.

On October 26, 2014, plaintiff informed defendants that she had submitted samples of her hair for testing to determine the presence of drugs at the time of the assault. The results of this test were positive for two over-the-counter drugs that are commonly used to induce incapacitation and memory loss. On October 27, 2014, Castillo-Appollonio informed plaintiff that Brown University "planned on issuing 'charge letters soon' in connection with the University's inquiry into her sexual assault."

On April 20, 2016, plaintiff requested an update from Brown University as to information related to the investigation of her sexual assault. On June 21, 2016, Brown University informed plaintiff that it never completed any investigation and had abandoned all disciplinary action against the three Brown University students who were allegedly involved.

On November 14, 2016, plaintiff filed an action against defendants in the United States District Court for the District of Rhode Island. The plaintiff sought damages and equitable relief pursuant to Title IX and RICRA, arising out of defendants' response to plaintiff's sexual-assault allegations. In that action, defendants moved for judgment on the pleadings. *Doe I*, 270 F. Supp. 3d at 559. The federal district court determined that plaintiff, as a nonstudent at Brown University, did not fall within "Title IX's private-cause-of-action umbrella of protection" and dismissed plaintiff's claim under Title IX. *Id.* at 563. The federal district court further concluded that, because it dismissed plaintiff's sole claim under federal law, it declined to exercise supplemental jurisdiction over the state law claims. *Id.* at 563-64. Thus, those claims were dismissed without prejudice. *Id.* at 564. The plaintiff appealed the District Court judgment, and the United States Court of Appeals for the First Circuit affirmed. *Doe II*, 896 F.3d at 133.

On September 28, 2017, plaintiff filed a complaint against defendants in the Superior Court seeking damages and equitable relief under RICRA and the Rhode Island Constitution. In response, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

In support of that motion, defendants argued that they had no control over the "hostile education environment" plaintiff claimed she experienced at Providence

College, and, therefore, they could not interfere with her educational contract with Providence College. The defendants further argued that collateral estoppel prevents plaintiff from bringing a claim under the "full and equal benefit of all laws and proceedings for the security of persons" clause of RICRA because in doing so plaintiff relies on her Title IX claim, which was dismissed by the federal district court, and which dismissal was upheld by the First Circuit. Lastly, defendants contended that plaintiff could not bring the state constitutional claim for damages against defendants because defendants were not state actors and the constitutional provision at issue does not create a private cause of action for damages.

In response, plaintiff argued that defendants' deliberate refusal to address the sexual assault violated plaintiff's rights under both RICRA and the Rhode Island Constitution. Further, plaintiff claimed that collateral estoppel did not apply here because the issues are distinct from those raised in federal court. Finally, plaintiff argued that Brown University is an institution doing substantial business with the State of Rhode Island and, therefore, falls within the purview of section 2 of article 1 of the Rhode Island Constitution.

A hearing on defendants' motion to dismiss was held in Superior Court on January 23, 2019. The parties returned for an additional hearing on February 6, 2019, at which the hearing justice issued a bench decision. The hearing justice determined that issue preclusion foreclosed the claims under RICRA based on the

decision of the federal courts. She also found that section 2 of article 1 of the Rhode Island Constitution does not grant plaintiff a private right of action. Accordingly, judgment entered in favor of defendants as to all counts of plaintiff's complaint on February 22, 2019. On February 25, 2019, plaintiff filed a timely notice of appeal.

**Standard of Review**

A motion under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure "has a narrow and specific purpose: 'to test the sufficiency of the complaint.'" *Mokwenyei v. Rhode Island Hospital*, 198 A.3d 17, 21 (R.I. 2018) (quoting *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 416 (R.I. 2013)). The motion to dismiss can be granted only "[i]f 'it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim[.]'" *Id.* (quoting *Rein v. ESS Group, Inc.*, 184 A.3d 695, 699 (R.I. 2018)). When deciding a motion to dismiss, the hearing justice "is to 'look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubt in a plaintiff's favor.'" *Id.* (quoting *Multi-State Restoration, Inc.*, 61 A.3d at 416).

However, this Court has recognized a "narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Mokwenyei*, 198 A.3d at 22 (quoting *Chase v. Nationwide Mutual*

*Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)). "To be more precise, if 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), then that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" *Id.* (brackets omitted) (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005)).

"In Rhode Island, 'a court may take judicial notice of court records' and, while 'not every document that may have been placed in a court file may properly be regarded as part of the record,' we have demarcated examples of those that would be considered as such." *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1126 (R.I. 2018) (brackets and deletion omitted) (quoting *Curreri v. Saint*, 126 A.3d 482, 485-86 (R.I. 2015)). "These would include judgments previously entered by the court that have the effect of res judicata pleadings or answers to interrogatories by a party, which pleading or answer might constitute an admission." *Id.* (brackets, alterations, and deletions omitted) (quoting *Curreri*, 126 A.3d at 486).

In the case at bar, the hearing justice considered "[plaintiff's] federal complaint, the United States District Court of Rhode Island decision, the First Circuit decision, and the filings in the First Circuit." These documents are clearly "official public records" within the purview of the recognized exception. *See Goodrow*, 184 A.3d at 1126 (holding that, when considering a motion to dismiss, the hearing justice

properly considered the plaintiff's federal district court complaint and the order dismissing it). Accordingly, we proceed by examining plaintiff's arguments within the confines of the standard of review applied to motions to dismiss.

## Discussion

On appeal, plaintiff argues that the hearing justice erred in determining that plaintiff's claims under RICRA were precluded by the prior dismissal of her federal Title IX claim. The plaintiff also argues that the hearing justice erred in holding that section 2 of article 1 of the Rhode Island Constitution does not grant her a private right of action.

In response, defendants argue that RICRA does not provide plaintiff with an independent cause of action against defendants that is broader than that provided by Title IX. Further, defendants contend that issue preclusion bars plaintiff's claims under RICRA because those claims are premised on the Title IX allegations. Lastly, defendants argue that the antidiscrimination clause in the Rhode Island Constitution does not create a private right of action and that, even if it does, defendants are not state actors. We address these arguments sequentially.

## Rhode Island Civil Rights Act

The Rhode Island Civil Rights Act provides that "[a]ll persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to

make and enforce contracts * * *." General Laws 1956 § 42-112-1(a). The plaintiff now asks us to recognize a cause of action under RICRA for "a university's failure to reasonably prevent, respond to, and remedy known acts of sex discrimination * * * on its campus, by its students."

Although we have not had the opportunity to examine the requirements for establishing a claim under RICRA, the federal courts have established the requirements for the statute's federal counterpart, codified at 42 U.S.C. § 1981. *See Hammond v. Kmart Corporation*, 733 F.3d 360, 362 (1st Cir. 2013). Specifically, to state a claim under the analogous federal statute, a plaintiff must show that: (1) he or she is a member of a protected class; (2) the defendant(s) discriminated against the plaintiff on the basis of this protected status; and (3) the discrimination implicates an activity listed in the statute. *See id.*

Here, plaintiff alleges two types of intentional discrimination by defendants. The plaintiff first alleges that Brown University had "a widespread policy of mishandling sexual assault on its campus, which constituted an official policy of sex discrimination that increased the risk of sexual assault to Jane Doe[.]" The plaintiff also alleges that Brown University's response to plaintiff's sexual assault was unreasonable in light of the circumstances. The plaintiff argues that such actions violate RICRA because it is broader and more protective than Title IX. Specifically,

plaintiff contends that defendants interfered with her contractual relationship with Providence College.

### Preclusion by Dismissal of Plaintiff's Title IX Claim

The plaintiff argues that her claims under RICRA are not dependent upon her Title IX claims asserted in federal court. She also argues that the question of whether defendants complied with Title IX requirements is not identical to any issue litigated in federal court.

Title IX, codified in 20 U.S.C. § 1681 *et seq.*, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance * * *." 20 U.S.C. § 1681(a).

"Under the doctrine of collateral estoppel, an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." *Foster-Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1014 (R.I. 2004) (quoting *George v. Fadiani*, 772 A.2d 1065, 1067 (R.I. 2001)). "Subject to situations in which application of the doctrine would lead to inequitable results," collateral estoppel is applied when: "(1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the

previous proceeding; [and] (3) the issue or issues in question are identical in both proceedings." *Id.*

Here, there is no question that the federal court action included the same parties and that a final judgment on the merits was entered with respect to the Title IX claims. *See Doe II*, 896 F.3d at 130-33; *Doe I*, 270 F. Supp. 3d at 560-63. At the outset of the federal case, on a motion for judgment on the pleadings, the federal district court dismissed plaintiff's claims because she was not a person that Title IX intended to protect against discrimination. *Doe I*, 270 F. Supp. 3d at 561. Because plaintiff did not attend the university against which she brought the Title IX claim, she was unable to avail herself of any recourse under Title IX. *Id.* (citing the Senate debate regarding Title IX, where the author of Title IX indicated "that the legislation addressed 'three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, *discrimination of available services or studies within an institution once students are admitted* and discrimination in employment within an institution, as a member of a faculty or whatever.'" (emphasis in original) (quoting *North Haven Board of Education v. Bell*, 456 U.S. 512, 526 (1982))). The federal circuit court clarified that, to establish a claim under Title IX, a plaintiff must allege "prejudicial treatment on the basis of sex while participating, or at least attempting to participate, in the funding recipient's education program or activity." *Doe II*, 896 F.3d at 131.

We are in agreement with the hearing justice that plaintiff's claims under RICRA are predicated upon defendants' alleged violations of Title IX. The plaintiff repeatedly relies on her Title IX claims throughout her complaint, stating: "Defendants never notified Ms. Doe of her right to file a Title IX complaint, or of any other rights to which she was entitled under Title IX"; "[d]efendants notified Ms. Doe that Brown University would proceed with its inquiry only under the student disciplinary code, which did not comply with Title IX standards"; "[d]efendants failed to act promptly and failed to provide Ms. Doe with adequate information and/or support, including even basic information about the status of the offender students, interim measures, timelines and deadlines for various stages of her Title IX complaint, and other information to which she was entitled under Title IX"; "[d]efendants failed to afford Ms. Doe the rights and protections to which she was entitled pursuant to Title IX"; "Brown University's policies and procedures related to sexual assault, as outlined in the Brown University sexual misconduct policy and Code of Student Conduct, deviated substantively from the Title IX standards"; "Brown [University]'s sexual misconduct policy separated out only sex-based harassment, discrimination, and violence for different and worse treatment compared to the Title IX standards"; and Brown University's "sexual misconduct policy and Code of Student Conduct failed to guarantee 'equitable' redress to Ms. Doe and all victims of sex-based violence, as is required by Title IX,

and imposed more onerous standards in the redress of sex-based civil rights violence than is required under Title IX."

We further agree with the hearing justice that the issue of whether defendants' action or inaction violated Title IX was decided in the federal court proceedings and that the resolution of that issue was "essential to the judgment on the merits." Accordingly, we affirm the hearing justice's grant of defendants' motion to dismiss plaintiff's claims under RICRA.

**Interference with Plaintiff's Contract with Providence College**

The plaintiff also contends that defendants interfered with her contract with Providence College. Specifically, she argues that "[a]s a result of Brown [University]'s misconduct, [plaintiff]'s academic performance suffered materially, and she was forced to withdraw from college."

We have primarily had the opportunity to review claims under RICRA in the employment context. *See generally Horn v. Southern Union Co.*, 927 A.2d 292 (R.I. 2007); *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13 (R.I. 2005); *Casey v. Town of Portsmouth*, 861 A.2d 1032 (R.I. 2004). However, here we analogize plaintiff's broad claim under RICRA to that of an interference with contractual relations claim. "To establish a prima facie claim for intentional interference with contractual relations, the aggrieved party must demonstrate (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his or her intentional

- 14 -

interference; and (4) damages resulting therefrom." *John Rocchio Corporation v. Pare Engineering Corporation*, 201 A.3d 316, 324 (R.I. 2019) (brackets omitted) (quoting *Lomastro v. Iacovelli*, 126 A.3d 470, 474 (R.I. 2015)).

The defendants acknowledge that plaintiff, as a student at Providence College, had an education contract with Providence College. The plaintiff has also pled sufficient facts to establish that defendants knew about her contract with Providence College through defendants' involvement with the police investigation. However, plaintiff's claim fails to surpass the third hurdle, that defendants' actions were an *intentional interference with her contract*. Notwithstanding the nature of defendants' actions or inactions either prior to or in response to plaintiff's sexual assault, its actions were so attenuated from plaintiff's contract with Providence College that we cannot say that any interference therewith was intentional as a matter of law.

For these reasons, we affirm the hearing justice's grant of defendants' motion to dismiss plaintiff's claims under RICRA.

**Article 1, Section 2 of the Rhode Island Constitution**

Lastly, plaintiff claims that the hearing justice erroneously dismissed her claim under article 1, section 2 of the Rhode Island Constitution. That section states:

> "All free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its

citizens. No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state. Nothing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof." R.I. Const., art. 1, § 2.

The plaintiff argues that this antidiscrimination clause applies to Brown University as an entity that does substantial business with the state.[6] Although the hearing justice thoroughly examined plaintiff's claims under RICRA, she addressed plaintiff's constitutional claim in but one sentence, stating, "Article I, Section 2 of the Rhode Island Constitution does not grant [plaintiff] a private right of action[.]"

The antidiscrimination clause, as well as the due process clause and equal protection clause, were added to the state constitution in 1986. *See L.A. Ray Realty*

---

[6] We note defendants' argument that plaintiff labeled her constitutional claim as "Violation of R.I. Const. art. I, § 2; Equal Protection" and that she therefore did not establish a claim under the antidiscrimination clause. However, defendants fail to recognize Rhode Island's more liberal pleading standard, which "merely requires that the complaint 'provide the opposing party with fair and adequate notice of the type of claim being asserted.'" *Barrette v. Yakavonis*, 966 A.2d 1231, 1234 (R.I. 2009) (quoting *Gardner v. Baird*, 871 A.2d 949, 953 (R.I. 2005)). In fact, this Court has said that under Rule 8(a) of the Superior Court Rules of Civil Procedure "a pleading need not * * * set out the precise legal theory upon which his or her claim is based." *Id.* (brackets omitted) (quoting *Gardner*, 871 A.2d at 953). The plaintiff specifically quoted the antidiscrimination clause in her count under article 1, section 2, and she used the phrase discrimination repeatedly throughout. Thus, we are satisfied that defendants were sufficiently on notice that plaintiff was proceeding under the antidiscrimination clause.

*v. Town Council of Town of Cumberland*, 698 A.2d 202, 218 (R.I. 1997). This Court has had limited opportunity to fully examine this antidiscrimination clause and whether it creates a private right of action. *See Folan v. State Department of Children, Youth, and Families*, 723 A.2d 287, 292 (R.I. 1999) (determining that a direct remedy pursuant to this section should "be reserved for situations where no statutory remedy is provided"). We have, however, recognized that,

> "[t]he intent of the resolution[, including the antidiscrimination clause in this section,] was to include the due process and equal protection language of the 14th Amendment to the U.S. Constitution in the Rhode Island Constitution. The Committee Report stated that including these protections in the state Constitution 'would create an independent state foundation for individual rights.'" *L.A. Ray Realty*, 698 A.2d at 218 (quoting Annotated Constitution of the State of Rhode Island at 2 (1988)).

We address the issue of whether the antidiscrimination clause creates a private cause of action within the framework of our well-settled jurisprudence and its adherence to judicial restraint. In the seminal case of *Bandoni v. State*, 715 A.2d 580 (R.I. 1998), we examined the question of whether article 1, section 23 of the Rhode Island Constitution, the victims' rights amendment, created a private cause of action, and we concluded that "principles of judicial restraint prevent us from creating a cause of action for damages in all but the most extreme circumstances." *Bandoni*, 715 A.2d at 595.

We first consider the threshold question of whether the antidiscrimination clause is self-executing—meaning, does the clause "supply 'a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed be enforced or does it merely indicate principles, without laying down rules by means of which those principles may be given the force of law?'" *Bandoni*, 715 A.2d at 586 (brackets and deletion omitted) (quoting *Davis v. Burke*, 179 U.S. 399, 403 (1900)).

> "A constitutional provision may be said to be self-executing *if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced*; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. * * * In short, if complete in itself, it executes itself." *Id.* at 587 (emphasis in original) (quoting *Davis*, 179 U.S. at 403).

We have adopted a model with additional standards to facilitate the determination of whether a particular provision is self-executing. *See Bandoni*, 715 A.2d at 587.

> "First, a self-executing provision should do more than express only general principles; it may describe the right in detail, *including the means for its enjoyment and protection. * * ** Second, ordinarily a self-executing provision does not contain a directive to the legislature for further action. * * * Third, the legislative history may be particularly informative as to the provision's intended operation. * * * Finally, a decision for or against self-execution must harmonize with the scheme of rights established in the constitution as a whole." *Id.* (brackets

- 18 -

omitted) (quoting *Shields v. Gerhart*, 658 A.2d 924, 928 (Vt. 1995)).

Using this standard, we are of the opinion that article 1, section 2 expresses only general principles and does not supply a sufficient rule of law by which the rights under the clause may be enjoyed, protected, and enforced; and, thus, this clause is not self-executing.

Under our established standard, we must determine whether the antidiscrimination clause "articulates specifically enforceable rights, including the means by which these rights may be enjoyed or protected, or whether it merely espouses general principles." *Bandoni*, 715 A.2d at 587. "In determining whether the first criterion is satisfied, we scrutinize the [statutory provision] for detail and precision." *Id.* at 588.

Article 1, section 2 articulates general principles and "the constitutional provision does not set forth rules that give those principles the force of law." *A.F. Lusi Construction, Inc. v. Rhode Island Convention Center Authority*, 934 A.2d 791, 798 (R.I. 2007). The provision also does not provide any means pursuant to which those included in the provision can enjoy or protect their rights. *See Bandoni*, 715 A.2d at 588 (finding that the statute at issue there did not "provide a procedural means by which crime victims may enjoy or protect their rights"). Clearly, the provision itself does not expressly provide a cause of action for damages. *See id.* at 589. Further, we are not persuaded by the use of the word "shall" in article 1, section

- 19 -

2. We have reiterated that "a constitutional provision may be expressed in mandatory terms and still not be self-executing." *Id.*

Next, we look to whether the clause contains a directive to the Legislature for further action, the legislative history, and the clause's intended operation. *See Bandoni*, 715 A.2d at 587. Although there is clearly no mandate in the language of the clause that the Legislature do anything further, we find this lack of a mandate to be unsurprising given the general nature of the constitutional provision. *See id.* We also find the legislative history to be inconclusive. When the resolution proposing the antidiscrimination clause was debated by the Constitutional Convention in 1986, the delegates never indicated that the resolution would create a private cause of action for damages; rather they spoke in terms of "clear guidance" and "enduring affirmation[s]." Proceedings at Hearing re. R.I. Const. Convention (June 5, 1986) at 156. Certainly, the language of the antidiscrimination clause itself does not provide for a private cause of action.

Finally, we address the fourth standard: that our conclusion that the clause is not self-executing "must harmonize with the scheme of rights established in our constitution as a whole." *Bandoni*, 715 A.2d at 594 (brackets omitted) (quoting *Shields*, 658 A.2d at 928). Article 1, section 2 is dedicated in its entirety to "laws for good of whole." This includes the state's fair-distribution clause, due process

clause, equal protection clause, and the antidiscrimination clause at issue. More generally, article 1 enumerates a number of other individual rights.

"This Court, however, has never held that violating a recognized right requires monetary damages." *Bandoni*, 715 A.2d at 594. "Furthermore, even if we were to conclude that [this provision] is self-executing, this fact alone would not necessarily support a claim for damages." *Id.* at 594-95. We have repeatedly said that "[t]he judiciary may not properly create a new cause of action in order to deal with a particular perceived wrong." *Cullen v. Lincoln Town Council*, 960 A.2d 246, 249 (R.I. 2008); *see DeSantis v. Prelle*, 891 A.2d 873, 881 (R.I. 2006); *Bandoni*, 715 A.2d at 584. This is a task confided by the Constitution to the Legislature, and the creation of such a remedy should be left to that body. *See Bandoni*, 715 A.2d at 595.

"[T]he function of adjusting remedies to rights is a legislative responsibility rather than a judicial task," and such a remedy has not been provided for under these circumstances. *Bandoni*, 715 A.2d at 596. Therefore, because the antidiscrimination clause sets forth "a laudable principle and not a workable rule of law," *A.F. Lusi Construction, Inc.*, 934 A.2d at 798 (quoting *Smiler v. Napolitano*, 911 A.2d 1035, 1039 n.5 (R.I. 2006)), we hold that this provision is not self-executing. Accordingly, we are satisfied that the hearing justice properly dismissed the plaintiff's claim under article 1, section 2 of the Rhode Island Constitution because the antidiscrimination clause does not give rise to a private cause of action.

- 21 -

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court.

The record shall be returned to the Superior Court.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jane Doe v. Brown University et al. |
| **Case Number** | No. 2019-167-Appeal. (PC 17-4635) |
| **Date Opinion Filed** | June 28, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Patrick T. Jones, Esq.<br>Ralph R. Liguori, Esq<br>Audrey R. Poore, Esq. |
| | For Defendants:<br><br>Steven M. Richard, Esq.<br>Michael D. Grabo, Esq. |